**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON,** | |
| **Plaintiffs,** | |
| | **CIVIL ACTION NO. 2:15-cv-287** |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| **APPLE INC.,** | |
| **Defendant.** | |

## ORIGINAL COMPLAINT

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (singularly or collectively, "Ericsson") file this Original Complaint for Patent Infringement against Apple Inc. ("Apple") and allege as follows:

## NATURE OF THE ACTION

1.      Each of the Ericsson Patents-in-Suit (defined below) is essential to either the 2G GSM or 4G LTE standard, and Ericsson takes this step only after exhausting all other options to conclude a license with Apple on fair, reasonable, and non-discriminatory ("FRAND") terms. Ericsson has contractually committed to license its portfolio of patents that are essential to practice certain telecommunication standards ("Essential Patents") on FRAND terms, with an honest intent to conduct its licensing efforts in a manner consistent with the intellectual property rights policy ("IPR Policy") set by the European Telecommunications Standards Institute ("ETSI"). This commitment is entered into by means of declaration documents, serving as contracts between Ericsson and ETSI for the benefit of third parties practicing the standard. Ericsson repeatedly licensed its Essential Patents to companies worldwide, resulting in over one

hundred agreements in the telecommunications industry alone, in which such companies have agreed to pay royalties to Ericsson in return for access to its global portfolio of patents on FRAND terms.

2.     In 2008, Apple agreed to take a license to certain of Ericsson's patents that are essential to various industry standards.  Before that license expired, Ericsson for two years extended offers to Apple to renew its license on FRAND terms.  Ericsson even offered to arbitrate the dispute over a FRAND royalty for Ericsson's global portfolio of essential patents, and more recently, to enter into a binding determination of FRAND licensing terms for Ericsson's global portfolio of standard-essential patents before a U.S. federal district court.  In sum, consistent with its obligations under the ETSI IPR Policy and to the technology community, Ericsson has sought in good faith to conclude a license agreement with Apple on FRAND terms.

3.     Ericsson's efforts have failed because Apple refuses to pay a FRAND royalty for a portfolio license commensurate with licenses taken by existing licensees and consistent with the parties' prior license. Apple's gambit is indistinguishable from a "reverse hold-up," in which Apple abuses the protections afforded by FRAND while taking a free license to use Ericsson's patented technology. Such tactics give Apple a substantial, unfair edge over its telecommunications competitors who have agreed to—and who maintain—licenses under Ericsson's global portfolio of patents on FRAND terms.  Apple has therefore not fulfilled its obligations to remain a third party beneficiary of the contract between Ericsson and ETSI.

4.     On January 12, 2015, without notice, Apple filed a declaratory judgment suit against Ericsson in the U.S. District Court for the Northern District of California, seeking declarations that seven of Ericsson's patents—not at issue here—are either not essential or not infringed.  In the event that those seven patents are proven essential, then Apple demands that the

District Court determine a special FRAND royalty just for Apple and just for those seven patents-in-suit.

5.      In view of Ericsson's much larger portfolio of standard essential patents in the United States and all over the world, Apple's strategy of litigating one standard essential patent at a time could result in perpetual litigation of hundreds of essential patents in dozens of countries, while Apple continues to infringe Ericsson's Essential Patents without paying FRAND royalties.  Not only would this deprive Ericsson of revenues necessary to continue innovating, but it could negatively affect Ericsson's licensees, who have agreed to pay royalties on FRAND terms.

6.      Such tactics are fundamentally unfair to Ericsson and its licensees, especially where (1) Ericsson's offer is consistent with the parties' last agreement, (2) Apple's competitors in the mobile telecommunications industry have actively licensed Ericsson's portfolio on comparable global FRAND licensing terms, and (3) Ericsson has even offered to arbitrate or litigate a FRAND royalty for Ericsson's Essential Patents in one proceeding before a U.S. federal district court.  Ericsson takes this step of seeking the issuance of an exclusion order directed to Apple only after exhausting all other options to conclude a license on FRAND terms.

## THE PARTIES

7.      Since 1876, Ericsson has pioneered communications technology in pursuit of its mission to connect everyone, wherever they may be.  The work of more than twenty-five thousand Ericsson research and development ("R&D") employees produced innovations fundamental to how phones, smartphones, and mobile devices connect seamlessly using cellular networks worldwide and offer a diverse and easy-to-use range of features and applications.  As a

result of its extensive research and development efforts, Ericsson has been awarded more than thirty-five thousand patents worldwide.

8.      Ericsson is widely viewed as a leading innovator in the field of cellular communications.  For more than three decades, Ericsson has pioneered development of the modern cellular network.  Every major mobile network operator in the world buys solutions or services from Ericsson, which manages networks serving more than one billion subscribers globally.  Forty percent of all mobile calls are made through Ericsson systems.  Ericsson's equipment is found in more than 180 countries.

9.      Ericsson also is a world-leading innovator of wireless and wired communications technologies as a result of its decades of investment in R&D.  Ericsson's inventions enable the communications capability of smartphones and other wireless devices around the world.  Access to people and information is paramount in this fast-paced, information-driven environment, and Ericsson's innovations have helped shape how people gain access by enabling technologies such as Wi-Fi, Bluetooth, 2G, 3G, and 4G LTE.  Ericsson also has devoted R&D resources in innovating wired communications that enable faster and easier methods of connecting people.

10.     The proliferation of smartphones demonstrates the importance of Ericsson's communication platform innovations.  The iPhone is but one example of many beneficiaries of Ericsson's fundamental technologies.  With more than two billion users of mobile telephony in the world, smartphones and other mobile devices with Ericsson's communication platform allow people to connect, increasing efficiency and improving users' experiences.

11.     Ericsson has a long history of technical innovations, including the patents at issue in this lawsuit.  Some of Ericsson's many accomplishments include:

• in 1878, Ericsson sold its first telephone;
• in 1977, Ericsson introduced the world's first digital telephone exchange;

4

- in 1981, Ericsson introduced its first mobile telephone system, NMT;
- in 1991, Ericsson launched 2G phones on the world's first 2G network;
- in 1994, Ericsson invented Bluetooth;
- in 2001, Ericsson made the world's first 3G call for Vodafone in the UK; and
- in 2009, Ericsson started the world's first 4G network and made the first 4G call.

12.     Ericsson's innovation continues.   Ericsson envisions a connected future, with more than three billion users and more than fifty billion connected devices, all of which will require better networks and greater capacity.  Ericsson's culture of innovations is reflected in its investment of over 15% of budget in R&D annually, supporting its twenty-five thousand employees striving to create a more interconnected world.  Protection of intellectual property is necessary to address those free riding on Ericsson's patented inventions, allowing Ericsson to continue innovating its remarkable technologies.

13.     Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

14.     Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

15.     Defendant Apple is a California corporation, with its principal place of business at 1 Infinite Loop, M/S 38-3TX, Cupertino, California 95014.  Apple designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States smartphones, tablets, and other mobile computing devices that operate over various cellular standards, including 2G, 3G, and 4G.   Apple further offers other wireless communication devices, computers, tablet computers, digital media players, and headphones. Apple's devices are marketed, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION AND VENUE

16.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

17.     This Court has personal jurisdiction over Apple.  Apple has continuous and systematic business contacts with the State of Texas. Apple, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas.  Apple, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Apple has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Apple has also directed communications in connection with its negotiations with Ericsson into the Eastern District of Texas.  Jurisdiction over Apple in this matter is also proper inasmuch as Apple has voluntarily submitted itself to the jurisdiction of the courts by commencing litigations within the State of Texas, by registering with the Texas Secretary of State's Office to do business in the State of Texas, and by appointing a registered agent.

## THE ERICSSON PATENTS

18.     On January 24, 2012, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,102,805 ("the '805 Patent"), entitled "HARQ in Spatial Multiplexing MIMO System," to Bo Göransson, Per Johan Torsner, and Stefan Parkvall. Ericsson owns all rights to the '805 Patent necessary to bring this action. A true and correct copy of the '805 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

19.     On December 11, 2012, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,331,476 ("the '476 Patent"), entitled "Method for Detecting Transmission Mode in a System Using Multiple Antennas," to George Jöngren. Ericsson owns all rights to the '476 Patent necessary to bring this action. A true and correct copy of the '476 Patent is attached hereto as Exhibit 2 and incorporated herein by reference.

20.     On October 9, 2001, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,301,556 ("the '556 Patent"), entitled "Reducing Sparseness in Coded Speech Signals," to Roar Hagen, Björn Stig Erik Johansson, Erik Ekudden, and Willem Baastian Kleijn. Ericsson owns all rights to the '556 Patent necessary to bring this action. A true and correct copy of the '556 Patent is attached hereto as Exhibit 3 and incorporated herein by reference.

21.     On December 10, 2013, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,607,130 ("the '130 Patent"), entitled "Computationally Efficient Convolutional Coding With Rate-Matching," to Jung-Fu Cheng. Ericsson owns all rights to the '130 Patent necessary to bring this action. A true and correct copy of the '130 Patent is attached hereto as Exhibit 4 and incorporated herein by reference.

22.     On May 6, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,717,996 ("the '996 Patent"), entitled "Uplink Scrambling During Random

Access," to Stefan Parkvall, Erik Dahlman, and Tobias Tynderfeldt. Ericsson owns all rights to the '996 Patent necessary to bring this action. A true and correct copy of the '996 Patent is attached hereto as Exhibit 5 and incorporated herein by reference.

23.     On February 25, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,660,270 ("the '270 Patent"), entitled "Method and Arrangement in a Telecommunication System," to Rolf Blom, Gunnar Mildh, and Karl Norrman. Ericsson owns all rights to the '270 Patent necessary to bring this action. A true and correct copy of the '270 Patent is attached hereto as Exhibit 6 and incorporated herein by reference.

24.     On September 16, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,837,381 ("the '381 Patent"), entitled "Using an Uplink Grant as Trigger of First or Second Type of CQI Report," to Eva Englund, Pål Frenger, and Stefan Parkvall. Ericsson owns all rights to the '381 Patent necessary to bring this action. A true and correct copy of the '381 Patent is attached hereto as Exhibit 7 and incorporated herein by reference.

25.     On May 2, 2000, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,058,359 ("the '359 Patent"), entitled "Speech Coding Including Soft Adaptability Feature," to Roar Hagen and Erik Ekudden. Ericsson owns all rights to the '359 Patent necessary to bring this action. A true and correct copy of the '359 Patent is attached hereto as Exhibit 8 and incorporated herein by reference.

26.     The '805, '476, '556, '130, '996, '270, '381, and '359 Patents are collectively referred to as the Ericsson Patents-in-Suit.

27.     Ericsson is the sole and exclusive owner of all rights, title, and interest to the Ericsson Patents-in-Suit necessary to bring this action, including the right to recover past and future damages. Ericsson has owned all rights to the Ericsson Patents-in-Suit necessary to bring

this action throughout the period of Apple's infringement and still owns those rights to the Ericsson Patents-in-Suit. Apple is not currently licensed to practice the Ericsson Patents-in-Suit.

28.     The Ericsson Patents-in-Suit are valid and enforceable.

29.     Apple has imported into the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States, smartphones, tablets, and other mobile communication devices, computers, digital media players, and accessories thereof that infringe the Ericsson Patents-in-Suit, or induce or contribute to the infringement of the Ericsson Patents-in-Suit.

30.     Apple's accused devices ("the Apple Accused Products") which infringe one or more claims of the Ericsson Patents-in-Suit include, but are not limited to, Apple products with 2G, 4G, and/or LTE cellular capabilities.  The Accused Products include but are not limited to Apple's iPhone and iPad products and any other cellular-enabled products.

31.     Apple has been placed on actual notice of at least some of the Ericsson Patents-in-Suit. At a minimum, in accordance with 35 U.S.C. § 287, Apple has had knowledge of the Ericsson Patents-in-Suit at least as early as the filing of this Original Complaint and/or the date this Original Complaint was served upon Apple. Further, Apple has participated in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the Ericsson Patents-in-Suit, and upon information and belief, Apple had knowledge of the Ericsson Patents-in-Suit based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed. Despite such notice, Apple continues to make, use, import into, market, offer for sale, and/or sell in the United States products that infringe the Ericsson Patents-in-Suit.

## GENERAL ALLEGATIONS

32.     Apple has directly and indirectly infringed and continues to directly and indirectly infringe each of the Ericsson Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of

making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into the United States, the Apple Accused Products.

33.     Apple is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or offering for sale the Apple Accused Products that infringe the patent claims involved in this action or by transacting other business in this District.

34.     Apple's acts of infringement have caused damage to Ericsson. Ericsson is entitled to recover from Apple the damages sustained by Ericsson as a result of Apple's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Apple have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Ericsson for which there is no adequate remedy at law, and for which Ericsson is entitled to injunctive relief under 35 U.S.C. § 283.

## COUNT I.

## <u>CLAIM FOR PATENT INFRINGEMENT OF THE '805 PATENT</u>

35.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '805 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '805 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '805 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

36.     The Apple Accused Products infringe one or more claims of the '805 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '805 Patent.

37.     Apple indirectly infringes the '805 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '805 Patent. Apple has had knowledge and notice of the '805 Patent at least as of August 21, 2013, by virtue of Ericsson presenting the '805 patent to Apple during the parties' negotiations.   Apple has also been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '805 Patent, and upon information and belief, Apple had knowledge of the '805 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.   Apple also received notice of the '805 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

38.     Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '805 Patent.   Apple has performed and continues to perform these affirmative acts with knowledge of the '805 Patent and with knowledge or willful blindness that the induced acts directly infringe the '805 Patent.

39.    Apple also indirectly infringes the '805 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has had knowledge and notice of the '805 Patent at least as of August 21, 2013, by virtue of Ericsson presenting the '805 patent to Apple during the parties' negotiations.  Apple also has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '805 Patent, and upon information and belief, Apple had knowledge of the '805 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '805 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

40.    Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '805 Patent is directly infringed.  The LTE interfaces within the Apple Accused Products are material to the invention of the '805 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '805 Patent.

41.    Apple's infringement of the '805 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have known that it directly infringed and was causing others to directly infringe the '805 Patent. The '805 Patent was presented by Ericsson to Apple on August 21, 2013, during the parties' licensing negotiations. Apple has also

been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '805 Patent, and upon information and belief, Apple had knowledge of the '805 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '805 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

42.     Apple's continued infringement of the '805 Patent has damaged and will continue to damage Ericsson.

## COUNT II.

### CLAIM FOR PATENT INFRINGEMENT OF THE '476 PATENT

43.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '476 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '476 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '476 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

44.     The Apple Accused Products infringe one or more claims of the '476 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '476 Patent.

45.     Apple indirectly infringes the '476 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '476 Patent. Apple has been involved in discussions with Ericsson regarding Ericsson's patent

portfolio, which includes the '476 Patent, and upon information and belief, Apple had knowledge of the '476 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '476 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

46.     Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '476 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '476 Patent and with knowledge or willful blindness that the induced acts directly infringe the '476 Patent.

47.     Apple also indirectly infringes the '476 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '476 Patent, and upon information and belief, Apple had knowledge of the '476 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '476 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

48.    Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '476 Patent is directly infringed.  The LTE interfaces within the Apple Accused Products are material to the invention of the '476 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '476 Patent.

49.    Apple's infringement of the '476 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '476 Patent, and upon information and belief, Apple had knowledge of the '476 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed. Apple also received notice of the '476 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

50.    Apple's continued infringement of the '476 Patent has damaged and will continue to damage Ericsson.

## COUNT III.

## CLAIM FOR PATENT INFRINGEMENT OF THE '556 PATENT

51.    Apple infringes, contributes to the infringement of, and/or induces infringement of the '556 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '556 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or

more claims of the '556 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

52.     The Apple Accused Products infringe one or more claims of the '556 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '556 Patent.

53.     Apple indirectly infringes the '556 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '556 Patent. Apple has had knowledge of the '556 Patent as of the Effective Date of the Ericsson— Apple Global Patent License Agreement and at least as of April 16, 2007, by virtue of Ericsson presenting the '556 Patent to Apple during the parties' negotiations.  Apple has also been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '556 Patent, and upon information and belief, Apple had knowledge of the '556 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '556 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

54.     Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals,

online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '556 Patent.   Apple has performed and continues to perform these affirmative acts with knowledge of the '556 Patent and with knowledge or willful blindness that the induced acts directly infringe the '556 Patent.

55.     Apple also indirectly infringes the '556 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has had knowledge of the '556 Patent as of the Effective Date of the Ericsson—Apple Global Patent License Agreement and at least as of April 16, 2007, by virtue of Ericsson presenting the '556 Patent to Apple during the parties' negotiations.   Apple also has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '556 Patent, and upon information and belief, Apple had knowledge of the '556 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.   Apple also received notice of the '556 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

56.     Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '556 Patent is directly infringed.   The 2G interfaces within the Apple Accused Products are material to the invention of the '556 Patent,

17

are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '556 Patent.

57.    Apple's infringement of the '556 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have known that it directly infringed and was causing others to directly infringe the '556 Patent. Apple had knowledge of the '556 Patent as of the Effective Date of the Ericsson—Apple Global Patent License Agreement and at least as of April 16, 2007, by virtue of Ericsson presenting the '556 Patent to Apple during the parties' negotiations. Apple has also been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '556 Patent, and upon information and belief, Apple had knowledge of the '556 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '556 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

58.    Apple's continued infringement of the '556 Patent has damaged and will continue to damage Ericsson.

## COUNT IV.

### CLAIM FOR PATENT INFRINGEMENT OF THE '130 PATENT

59.    Apple infringes, contributes to the infringement of, and/or induces infringement of the '130 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '130 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '130 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

60.    The Apple Accused Products infringe one or more claims of the '130 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '130 Patent.

61.    Apple indirectly infringes the '130 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '130 Patent. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '130 Patent, and upon information and belief, Apple had knowledge of the '130 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.   Apple also received notice of the '130 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

62.    Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '130 Patent.   Apple has performed and

continues to perform these affirmative acts with knowledge of the '130 Patent and with knowledge or willful blindness that the induced acts directly infringe the '130 Patent.

63.     Apple also indirectly infringes the '130 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '130 Patent, and upon information and belief, Apple had knowledge of the '130 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '130 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

64.     Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '130 Patent is directly infringed.  The LTE interfaces within the Apple Accused Products are material to the invention of the '130 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '130 Patent.

65.     Apple's infringement of the '130 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '130 Patent, and upon information and belief, Apple had knowledge of the '130 Patent based on these discussions and

any additional investigations of Ericsson's patent portfolio that Apple may have performed. Apple also received notice of the '130 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

66.     Apple's continued infringement of the '130 Patent has damaged and will continue to damage Ericsson.

## COUNT V.

## CLAIM FOR PATENT INFRINGEMENT OF THE '996 PATENT

67.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '996 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '996 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '996 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

68.     The Apple Accused Products infringe one or more claims of the '996 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '996 Patent.

69.     Apple indirectly infringes the '996 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '996 Patent. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '996 Patent, and upon information and belief, Apple had knowledge of the '996 Patent based on these discussions and any additional investigations of Ericsson's

patent portfolio that Apple may have performed.  Apple also received notice of the '996 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

70.     Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '996 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '996 Patent and with knowledge or willful blindness that the induced acts directly infringe the '996 Patent.

71.     Apple also indirectly infringes the '996 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '996 Patent, and upon information and belief, Apple had knowledge of the '996 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '996 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

72.     Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused

Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '996 Patent is directly infringed.  The LTE interfaces within the Apple Accused Products are material to the invention of the '996 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '996 Patent.

73.     Apple's infringement of the '996 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '996 Patent, and upon information and belief, Apple had knowledge of the '996 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed. Apple also received notice of the '996 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

74.     Apple's continued infringement of the '996 Patent has damaged and will continue to damage Ericsson.

## COUNT VI.

## CLAIM FOR PATENT INFRINGEMENT OF THE '270 PATENT

75.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '270 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '270 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '270 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

76.     The Apple Accused Products infringe one or more claims of the '270 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '270 Patent.

77.     Apple indirectly infringes the '270 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '270 Patent. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '270 Patent, and upon information and belief, Apple had knowledge of the '270 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.   Apple also received notice of the '270 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

78.     Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '270 Patent.   Apple has performed and

continues to perform these affirmative acts with knowledge of the '270 Patent and with knowledge or willful blindness that the induced acts directly infringe the '270 Patent.

79.     Apple also indirectly infringes the '270 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '270 Patent, and upon information and belief, Apple had knowledge of the '270 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '270 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

80.     Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '270 Patent is directly infringed.  The LTE interfaces within the Apple Accused Products are material to the invention of the '270 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '270 Patent.

81.     Apple's infringement of the '270 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '270 Patent, and upon information and belief, Apple had knowledge of the '270 Patent based on these discussions and

any additional investigations of Ericsson's patent portfolio that Apple may have performed. Apple also received notice of the '270 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

82.     Apple's continued infringement of the '270 Patent has damaged and will continue to damage Ericsson.

## COUNT VII.

## CLAIM FOR PATENT INFRINGEMENT OF THE '381 PATENT

83.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '381 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '381 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '381 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

84.     The Apple Accused Products infringe one or more claims of the '381 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '381 Patent.

85.     Apple indirectly infringes the '381 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.  For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '381 Patent. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '381 Patent, and upon information and belief, Apple had knowledge of the '381 Patent based on these discussions and any additional investigations of Ericsson's

26

patent portfolio that Apple may have performed.  Apple also received notice of the '381 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

86.    Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers, and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '381 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '381 Patent and with knowledge or willful blindness that the induced acts directly infringe the '381 Patent.

87.    Apple also indirectly infringes the '381 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '381 Patent, and upon information and belief, Apple had knowledge of the '381 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '381 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

88.    Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused

Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '381 Patent is directly infringed.  The LTE interfaces within the Apple Accused Products are material to the invention of the '381 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be especially made or especially adapted for use in infringement of the '381 Patent.

89.     Apple's infringement of the '381 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have Apple has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '381 Patent, and upon information and belief, Apple had knowledge of the '381 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed. Apple also received notice of the '381 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

90.     Apple's continued infringement of the '381 Patent has damaged and will continue to damage Ericsson.

## COUNT VIII.

### CLAIM FOR PATENT INFRINGEMENT OF THE '359 PATENT

91.     Apple infringes, contributes to the infringement of, and/or induces infringement of the '359 Patent by making, using, selling, offering for sale, and/or importing into the United States products and/or methods covered by one or more claims of the '359 Patent including, but not limited to, at least the Apple Accused Products. The accused devices that infringe one or more claims of the '359 Patent include, but are not limited to, at least the Apple Accused Products. Further discovery may reveal additional infringing products.

92.     The Apple Accused Products infringe one or more claims of the '359 Patent. Apple makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States these devices and thus directly infringes the '359 Patent.

93.     Apple indirectly infringes the '359 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as manufacturers, resellers, developers, customers, and end-users, in this District and elsewhere in the United States.   For example, manufacturers, resellers, developers, customers, and end-users of the Apple Accused Products directly infringe by making, using, selling, offering to sell, and/or importing the inventions claimed in the '359 Patent. Apple has had knowledge of the '359 Patent as of the Effective Date of the Ericsson— Apple Global Patent License Agreement and at least as of April 16, 2007, by virtue of Ericsson presenting the '359 Patent to Apple during the parties' negotiations.   Apple has also been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '359 Patent, and upon information and belief, Apple had knowledge of the '359 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.   Apple also received notice of the '359 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

94.     Apple's affirmative acts of: manufacturing, selling, distributing, and/or otherwise making available the Apple Accused Products; causing others to manufacture, sell, distribute, and/or make available the Apple Accused Products; and/or providing instructions, documentation, and/or other information regarding using the Apple Accused Products in the way Apple intends, including in-store technical support, online technical support, product manuals, online documentation, developer information, API documentation, and other information about the Apple Accused Products, induce Apple's manufacturers, resellers, developers, customers,

and/or end-users to make, use, sell, and/or offer to sell the Apple Accused Products in the way that Apple intends, in order to directly infringe the '359 Patent.  Apple has performed and continues to perform these affirmative acts with knowledge of the '359 Patent and with knowledge or willful blindness that the induced acts directly infringe the '359 Patent.

95.     Apple also indirectly infringes the '359 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as manufacturers, resellers, developers, customers, and/or end-users, in this District and elsewhere in the United States. Apple has had knowledge of the '359 Patent as of the Effective Date of the Ericsson—Apple Global Patent License Agreement and at least as of April 16, 2007, by virtue of Ericsson presenting the '359 Patent to Apple during the parties' negotiations.  Apple also has been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '359 Patent, and upon information and belief, Apple had knowledge of the '359 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '359 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

96.     Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Apple Accused Products and causing the Apple Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's manufacturers, resellers, developers, customers and/or end-users making, using, selling, and/or offering to sell the Apple Accused Products, such that the '359 Patent is directly infringed.  The 2G interfaces within the Apple Accused Products are material to the invention of the '359 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and

are known by Apple to be especially made or especially adapted for use in infringement of the '359 Patent.

97.     Apple's infringement of the '359 Patent has been and continues to be willful. Upon information and belief, Apple knew or should have known that it directly infringed and was causing others to directly infringe the '359 Patent. Apple had knowledge of the '359 Patent as of the Effective Date of the Ericsson—Apple Global Patent License Agreement and at least as of April 16, 2007, by virtue of Ericsson presenting the '359 Patent to Apple during the parties' negotiations. Apple has also been involved in discussions with Ericsson regarding Ericsson's patent portfolio, which includes the '359 Patent, and upon information and belief, Apple had knowledge of the '359 Patent based on these discussions and any additional investigations of Ericsson's patent portfolio that Apple may have performed.  Apple also received notice of the '359 patent as of the date this lawsuit was filed and/or the date this Original Complaint was served upon Apple.

98.     Apple's continued infringement of the '359 Patent has damaged and will continue to damage Ericsson.

**DAMAGES**

99.     As a result of Apple's acts of infringement, Ericsson has suffered actual and consequential damages; however, Ericsson does not yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting.  To the fullest extent permitted by law, Ericsson seeks recovery of damages at least for reasonable royalties, unjust enrichment, and benefits received by Apple as a result of using the misappropriated technology.  Ericsson further seeks any other damages to which Ericsson is entitled under law or in equity.

**ATTORNEYS' FEES**

100.    Ericsson is entitled to recover reasonable and necessary attorneys' fees under applicable law.

**DEMAND FOR JURY TRIAL**

Ericsson hereby demands a trial by jury on its claims for patent infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.    Adjudge that Apple infringes the Ericsson Patents-in-Suit;

B.    Adjudge that Apple's infringement of the Ericsson Patents-in-Suit was willful, and that Apple's continued infringement of these patents is willful;

C.    Award Ericsson damages in an amount adequate to compensate Ericsson for Apple's infringement of the Ericsson Patents-in-Suit, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D.    Award enhanced damages pursuant to 35 U.S.C. § 284;

E.    Award Ericsson pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

F.    Adjudge and declare that Apple refused to accept Ericsson's FRAND-compliant offers for a license to Ericsson's Essential Patents and, as a result, enter a permanent injunction against all Apple products found to infringe the Ericsson Patents-in-Suit;

G.    In lieu of an injunction, award a mandatory future royalty payable on each future product sold by Apple that is found to infringe one or more of the patents asserted

herein, and on all future products which are not colorably different from products found to infringe;

H.    Enter an order finding that this is an exceptional case and awarding Ericsson its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

I.    Order an accounting of damages;

J.    Award Ericsson its costs of suit; and

K.    Award such other relief as the Court may deem appropriate and just under the circumstances.

Dated: February 26, 2015                Respectfully submitted,

                                        **MCKOOL SMITH, P.C.**

                                        By: */s/ Kevin L. Burgess*
                                        Mike McKool, Jr.
                                        Texas State Bar No. 13732100
                                        mmckool@mckoolsmith.com
                                        Douglas A. Cawley
                                        Texas State Bar No. 0403550
                                        dcawley@mckoolsmith.com
                                        Theodore Stevenson, III
                                        Texas State Bar No. 19196650
                                        tstevenson@mckoolsmith.com
                                        300 Crescent Court, Suite 1500
                                        Dallas, Texas  75201
                                        Telephone:  (214) 978-4000
                                        Telecopier:  (214) 978-4044

                                        Samuel F. Baxter
                                        Texas State Bar No. 01938000
                                        sbaxter@mckoolsmith.com
                                        104 E. Houston Street, Suite 300
                                        P.O. Box 0
                                        Marshall, Texas 75670
                                        Telephone: (903) 923-9000
                                        Telecopier: (903) 923-9099

                                        Kevin L. Burgess, Lead Attorney
                                        Texas State Bar No. 24006927
                                        kburgess@mckoolsmith.com
                                        300 W. Sixth Street, Suite 1700
                                        Austin, Texas 78701
                                        Telephone: (512) 692-8700
                                        Telecopier: (512) 692-8744

                                        **ATTORNEYS FOR PLAINTIFFS**
                                        **ERICSSON INC. and**
                                        **TELEFONAKTIEBOLAGET LM**
                                        **ERICSSON**